IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JEFFERY C. THOMPSON                                                              PLAINTIFF

      v.                                Civil No. 07-5223

SHERIFF TIM HELDER;
CORPORAL NATHAN MATHEWS;
and OFFICER SAM CAUDLE                                                    DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Jeffery C. Thompson, filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis.*

Because the court needed additional information about his claims, Thompson was directed (Doc. 7) to file an addendum to his complaint. The addendum was filed on January 15, 2008 (Doc. 8). The case is now before the undersigned for a determination of whether service of process should issue.

### Background

Thompson was booked into the Washington County Detention Center (WCDC) on December 27, 2006. *Addendum* at ¶ 1. He was incarcerated because of pending criminal charges of rape, kidnapping, aggravated assault, terroristic threatening, and a firearm enhancement. *Id.* at ¶ 2. He was initially placed in a "padded cell" for three or four days. *Addendum* at ¶ 3. Thompson does not know who ordered him placed in the "padded cell" but he indicated he was mentally unstable at the time he was booked into the facility. *Id.* at ¶ 3(A). He received three meals a day with a pint of milk. *Id.* at ¶ 3(C) & ¶ 3(D). He was wearing a "green suicide vest" while assigned to this cell. *Id.* at ¶ 3(F). There was room in the cell to exercise. *Id.* at ¶ 3(H). He

-1-

was released by the detention center nurse and told if he hurt himself he would go back into the padded cell. *Id.* at ¶ 3(K). He maintains it was cold in the room and he had no blanket. *Id.* at ¶ 3.

On the night of May 28, 2007, Thompson alleges he witnessed detention center officers, Corporal Mathews, Officer Caudle, and another unknown officer, direct fellow detainees, Jack Turner and Ronnie Reynolds, to attack another detainee, Michael Jacobson. After the beating, Thompson indicates Michael Jacobson was moved to protective custody. Thompson alleges there were no pictures taken of Jacobson's injuries and no investigation conducted.

Since that night, until his release from the WCDC, Thompson states he feared for his safety. Eventually when he was in the booking area on an unrelated matter, he states he told a detention officer, who turned out to be an internal affairs officer, about the incident. Thompson indicates an investigation was eventually conducted and he wrote a statement about what he saw and heard during the incident. Thompson indicates Matthews and Caudle still work at the detention center but he believes since the investigation the third officer no longer works there.

To Thompson's knowledge May 28th was the only time a fellow inmate was attacked on orders of detention center personnel. *Addendum* at ¶ 4. He nevertheless feared for his safety because personnel could at any time order an attack on him without reason or warning. *Id.* He maintains detention center personnel could decide they didn't like his charges, his attitude, etc., and order an attack without fear of retribution. *Id.* Thompson also contends his Post-Traumatic Stress Disorder (PTSD) was aggravated by what occurred. *Id.*

Sheriff Helder was not personally involved in any of the constitutional violations Thompson alleges in his complaint. *Addendum* at ¶ 9. Thompson was asked how Sheriff Helder

AO72A
(Rev. 8/82)

had violated his federal constitutional rights. Thompson responded that Helder has allowed a climate to exist at the detention center where the staff put themselves above the law. *Id.* at ¶ 5. By allowing Mathews and Caudle to continue working after the attack, Thompson maintains the Sheriff has supported the climate at the detention center and he believes another attack is inevitable. *Id.* He also believes that if you are accused of an offense of a sexual nature you are automatically assumed by the detention center staff to be guilty. *Id.* at ¶ 10.

Finally, Thompson contends he was discriminated against because he had not been moved out of "K" pod into a more open less restrictive area. Specifically, Thompson states other inmates with similar charges had been moved to "B" pod which is less restrictive and more open and visible.

Inmates generally assigned to "K" pod are those with charges of a sexual nature. *Addendum* at ¶ 6(A). The individuals in "K" pod are locked out of the cells eight hours a day and locked in their cells eight hours each night. *Id.* at ¶ 6(B).

Thompson does not know what inmates are assigned to "B" pod although he knows there are some inmates assigned to that pod who are charged with crimes of a sexual nature. *Addendum* at ¶ 6(C). "B" pod is an open barracks with no individual cells just bed racks. *Id.* There are no lock-downs or lock out periods and the inmates have free movement. *Id.* at ¶ 6(D).

Thompson does not know who at the WCDC makes the decision of what inmates are assigned to what pod. *Addendum* at ¶ 6(E). An inmate can submit a request to be moved from pod to pod. *Id.* at ¶ 6(F). Thompson indicates he was told by Officer Becker if Thompson caused no problems for the staff, and had been detained longer than six months, he could be moved. *Id.* at ¶ 6(G). However, in response to his request to be moved, Thompson was told that due to the

nature of his charges, he could not be moved. *Id.* at ¶ 7. Thompson concedes that inmates charged with offenses of a sexual nature, such as rape, are generally assigned to the same pod–"K" pod. *Id.*

## Discussion

This case is subject to dismissal. First, with respect to the assignment to the padded room, Thompson indicated he was mentally unstable when he was booked in. *Addendum* at ¶ 3(A). He was confined to the room for three to four days and then released by the nurse. *Id.* at ¶ 3(K). He received his meals, something to drink with meals, had something to wear (a green suicide vest), and there was room to exercise. *Id.* at ¶ 3(C), ¶ 3(D), ¶ 3(F), and ¶ 3(H).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006)(adopting the Eighth Amendment's deliberate indifference standard as the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety."). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of

decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

In *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994), the court noted that "[c]onditions of confinement . . . constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human needs such as food, warmth, or exercise. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.'" In light of these principles, it is clear Thompson's allegations regarding the padded cell fall far short of those necessary to state a claim under the Eighth Amendment.

Second, his claim based on the attack on a fellow detainee, is in essence a failure to protect claim. In addressing failure to protect claims brought by pretrial detainees, the Eighth Circuit Court of Appeals has noted that pretrial detainees are entitled to at least as much protection as a convicted inmate and has applied Eighth Amendment analysis to claims brought both by pretrial detainees and convicted prisoners. *See Perkins v. Grimes*, 161 F.3d 1127, 1129-1130 (8th Cir. 1998). *See also Crow v. Montgomery*, 403 F.3d 598, 600 (8th Cir. 2005)(analyzing a pretrial detainee's failure to protect claim under the same Eighth Amendment analysis used for similar claims brought by convicted prisoners); *Thomas v. Booker*, 784 F.2d 299 (8th Cir. 1986)(same).

In *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002), the court stated:

An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn.,* 260

> F.3d 901, 906 (8th Cir. 2001) (internal quotations omitted). The question is whether a prison official has a "sufficiently culpable state of mind," meaning that [he] is deliberately indifferent to an inmate's safety. *Farmer,* 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 838-39; *see also Jackson,* 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendant's] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Farmer,* 511 U.S. at 837.

*Riley,* 282 F.3d at 595. *See also Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002).

In this case, Thompson has alleged only a single instance in which a fellow inmate was allegedly attack on orders of detention center personnel. *Addendum* at ¶ 4. This falls far short of showing he was incarcerated under conditions posing a substantial risk of serious harm or that a pervasive risk of harm existed. *See e.g., Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985)("[a] pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror."). No claim of constitutional dimension is stated.

Finally, Thompson contends he was discriminated against when he was assigned to "K" pod a more restrictive and less open pod than "B" pod. However, he concedes "K" pod was the pod generally used for inmates with charges of a sexual nature. *Addendum* at ¶ 6(A) & ¶ 7. He was not on lock-down twenty-four hours a day. *Id.* at ¶ 6. In fact, he was locked out of his cell eight hours each day. *Id.* at ¶ 6(B). He was locked down in his cell eight hours each night. *Id.* He does not allege he was treated differently than other inmates assigned to "K" pod or that other pretrial detainees were not assigned to "K" pod.

No claim is stated under the Due Process Clause when an inmate is merely given an administrative housing assignment based on the nature of his charges rather than as punishment for his charges. Thompson concedes "K" pod was used for detainees charged with offenses of a sexual nature. *See e.g., Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002)(no process is required if he is placed in segregation not as punishment but for managerial reasons). There is no constitional right to a particular housing assignment.

## Conclusion

Accordingly, I recommend that this case be dismissed on the grounds that the claims are frivolous and fail to state claims. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii)(IFP action may be dismissed on such grounds at any time).

**Thompson has ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. Thompson is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of March 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE